UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PAUL DISMUKES,

    Plaintiff,

v.

UNITED STATES DEPARTMENT OF
VETERANS AFFAIRS, *et al.*,

    Defendants.

Civil Action No. 23-cv-02259 (ACR)

**MEMORANDUM OPINION AND ORDER**

    Plaintiff Paul Dismukes, appearing *pro se* and *in forma pauperis*, sued the United States Department of Veterans Affairs (VA) and its Secretary alleging violations of Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. §§ 2000e-16 *et seq.*, the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.*, 42 U.S.C. § 1981, and the Utah Antidiscrimination Act (UADA), Utah Code Ann. §§ 34A-5-101–114. Dkt. 1. Before the Court is Defendants' Motion to Dismiss, Dkt. 10, brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6), on the bases of immunity, failure to exhaust, and failure to state a claim,[1] Dkt. 10-1 at 1–5. For the reasons explained below, the Court **GRANTS** Defendants' Motion.

**I. BACKGROUND**

    Plaintiff, a resident of Baltimore, Maryland, *see* Dkt. 1 ¶ 1, applied for a Program Specialist position at the VA's George E. Wahlen Medical Center in Salt Lake City, Utah, on June, 18, 2021, *see id.* ¶ 5. His application included a "questionnaire that supplied the requested information about [his] protected status." Dkt. 10-3 ¶ 10. On August 5, 2021, the VA notified

---

[1] Defendants argue in the alternative that the Court should transfer this case to the District of Utah pursuant to 28 U.S.C. §§ 1404(a), 1406(a). *See* Dkt. 10-1 at 1, 13–23. Because the Court dismisses this matter in its entirety, it need not reach Defendants' alternative arguments.

1

Plaintiff that he was not selected for the position. *See id.* ¶ 14; Dkt. 1 ¶ 7. He was not interviewed, nor did he receive any feedback about his application. *See* Dkt. 10-3 ¶¶ 11–12, 14.

On September 17, 2021, Plaintiff filed an administrative complaint with the VA, alleging his non-selection was because of discrimination based on his age at the time of application (51), his race (African-American), and his sex (male). *See* Dkt. 1 ¶¶ 9, 12.

According to Plaintiff, his "qualifications were unmatched for the position by any other applicant, given his two master's degrees in Social Policy and Public Administration, along with specific job experience in medical research, federal drug abuse policy implementation, teaching, and healthcare policy." Dkt. 1 ¶ 6. He alleged the VA failed to appropriately consider his application by overlooking his obvious qualifications and speculated that the agency hired a less qualified candidate. *See* Dkt. 1 ¶¶ 6–9; Dkt. 10-6 ¶ 16. In response, the VA stated that although Plaintiff was perhaps qualified for the position, the Agency gave priority consideration to the "internal [VA] applicant pool" before considering outside applicants. *See* Dkt. 1-1 at 2–3. Ultimately, it chose an internal candidate with a wealth of experience in medical support based in community care, including at the Wahlen Medical Center itself. *Id.*

The VA denied Plaintiff's discrimination claim. *See id.* at 2. Plaintiff appealed to the Equal Employment Opportunity Commission (EEOC), which affirmed the VA's determinations on May 8, 2023. *See id.* at 3; Dkt. 1 ¶ 12.

On August 24, 2023, Plaintiff filed this lawsuit, again alleging that he was the most qualified candidate, *see* Dkt. 1 ¶¶ 6–9, and that Defendants' failure to hire him constituted discrimination based on his age, race, and sex, *see id.* ¶¶ 2, 9. Plaintiff now also alleges that his non-selection for the position constituted retaliation arising from his previous protected activity. *See id.* ¶¶ 10–11. He believes the VA retaliated against him due to his previous EEOC

complaint(s), which he filed after the VA chose not to select him for a position on two prior occasions—July 14, 2021, and July 18, 2021. *Id*. He seeks back pay and front pay, as well as compensatory and punitive damages.[2] *See id*. at 4.

In response to the Complaint, on May 30, 2024, Defendants filed their pending Motion to Dismiss. Dkt. 10. On June 3, 2024, the Court entered an Order,[3] Dkt. 11, directing Plaintiff to respond to Defendants' Motion by July 12, 2024, and it advised him of the consequences of failing to do so, *see id.* at 1–2 (citing *Fox v. Strickland*, 837 F.2d 507, 509 (D.C. Cir. 1988) (per curiam)). Despite this warning, to date, Plaintiff has neither responded to Defendants' Motion to Dismiss[4] nor has he otherwise participated in this case since its initial filing.

## II.   LEGAL STANDARDS

### A. Subject-Matter Jurisdiction

Under Rule 12(b)(1), the plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "Federal courts are courts of limited jurisdiction," and the law presumes that "a

---

[2] Although Title VII may provide for compensatory or punitive damages, the ADEA generally does not. *See Liu v. Georgetown*, No. 22-157, 2024 WL 4362128, at *12–13 (D.D.C. Sept. 30, 2024) (collecting cases).

[3] The Court notes that its Order was mailed to Plaintiff's address of record on June 3, 2024, but that Order, along with a Minute Order issued on May 14, 2024, were both returned to the Clerk as undeliverable, with no forwarding address, on July 1, 2024. *See* Dkt. 13 at 3. Defendants have also noted their difficulty in corresponding with and serving Plaintiff due to his failure to update his address of record. *See* Dkt. 12. *Pro se* litigants must comply with the Federal and Local Rules of Civil Procedure, *see Jarrell v. Tisch*, 656 F. Supp. 237, 239–40 (D.D.C. 1987), and that includes the obligation to file a notice of a change in address or telephone number within 14 days of that change, *see* LCvR 5.1(c)(1). Plaintiff has not complied with this Rule.

[4] Although the Court could grant Defendants' Motion as conceded, the D.C. Circuit has expressed concerns about the use of Local Civil Rule 7(b) to grant unopposed motions to dismiss, particularly those brought pursuant to Federal Rule 12(b)(6). *See Cohen v. Bd. of Trs. of the Univ. of the Dist. of Columbia*, 819 F.3d 476, 481–82 (D.C. Cir. 2016).

cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "[B]ecause subject-matter jurisdiction is an Art[icle] III as well as a statutory requirement . . . no action of the parties can confer subject-matter jurisdiction upon a federal court." *Akinseye v. Dist. of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003) (cleaned up). A court must dismiss an action "at any time" if it determines that subject-matter jurisdiction is wanting. *See* Fed. R. Civ. P. 12(h)(3). Applicable here, sovereign immunity "goes to the subject matter jurisdiction of the court." *Delta Foods Inc. v. Republic of Ghana*, 265 F.3d 1068, 1071 (D.C. Cir. 2001); *see* 28 U.S.C. § 1915(e)(2)(B)(iii).

When reviewing a challenge under Rule 12(b)(1), a court may consider documents outside the pleadings to assess whether it has jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947); *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987). By considering documents outside the pleadings when reviewing a motion to dismiss under Rule 12(b)(1), a court does not convert the motion into one for summary judgment. Rather, "the plain language of Rule 12(b) permits only a 12(b)(6) motion to be converted into a motion for summary judgment" when documents extraneous to the pleadings are considered by a court. *Haase*, 835 F.2d at 905.

B. **Failure to State a Claim**

In evaluating a motion to dismiss for failure to state a claim, a court must "treat the complaint's factual allegations as true . . . and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000) (cleaned up).

To survive a 12(b)(6) motion, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Relevant here, a motion to dismiss for a plaintiff's failure to exhaust Title VII or ADEA administrative remedies is "properly addressed as motions to dismiss for failure to state a claim." *Scott v. Dist. Hosp. Partners*, 60 F. Supp. 3d 156, 161 (D.D.C. 2014) (cleaned up). This is because a "failure to exhaust administrative remedies under the ADEA and Title VII is an affirmative defense, not a jurisdictional requirement." *Koch v. Walter*, 935 F. Supp. 2d 164, 170 (D.D.C. 2013).

In assessing a 12(b)(6) challenge, a court may ordinarily consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint and matters about which the Court may take judicial notice," *Gustave–Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), without converting the motion to dismiss into one for summary judgment, *Baker v. Henderson*, 150 F. Supp. 2d 13, 15 (D.D.C. 2001) (citations omitted). This includes documents that are "referred to in the complaint and . . . central to the plaintiff's claim," even if they are produced by defendant in support of a motion to dismiss. *See Solomon v. Off. of the Arch. of the Capitol*, 539 F. Supp. 2d 347, 349–50 (D.D.C. 2008) (cleaned up).

### III.  ANALYSIS

#### A.  42 U.S.C. § 1981 & UADA Claims

Defendants assert sovereign immunity for the claims brought under 42 U.S.C. § 1981 and the UADA, *see* Dkt. 10-1 at 6–7, and the Court agrees. "[T]he United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Testan*, 424 U.S. 392, 399

(1976) (cleaned up).  Such consent, moreover, must be clear and unequivocal, and it cannot be implied.  *See United States v. Mitchell,* 445 U.S. 535, 538 (1980).

First, Defendants have not consented to suit under 42 U.S.C. § 1981.  Section 1981 "protects the equal right of all persons within the jurisdiction of the United States to make and enforce contracts without respect to race." *Brown v. Sessoms*, 774 F.3d 1016, 1022 (D.C. Cir. 2014) (cleaned up).  But "[t]he protection offered under 42 U.S.C. § 1981 is limited in its scope" and "applies only to 'nongovernmental discrimination and impairment under color of State law.'" *See Marcus v. Geithner*, 813 F. Supp. 2d 11, 19–20 (D.D.C. 2011) (quoting 42 U.S.C. § 1981 and explaining its legislative history).  In other words, "[t]he statute does not apply to actions taken under color of federal law," and so it does not apply to federal agencies or officials. *See id.* (citing *Kizas v. Webster*, 707 F.2d 524, 541–43 (D.C. Cir. 1983)).

Sovereign immunity thus bars Plaintiff's claims against Defendants, rendering this Court without subject-matter jurisdiction over Plaintiff's claims brought under 42 U.S.C. § 1981.  *See Smalls v. Emanuel*, 840 F. Supp. 2d 23, 29–30 (D.D.C. 2012) (holding that Title VII is the "exclusive judicial remedy" for claims of race discrimination related to federal employment and so such a claim cannot be brought under Section 1981) (cleaned up).

Second, Plaintiff's claims under the UADA are also barred due to sovereign immunity. Generally, sovereign immunity bars discrimination claims against the federal government brought under local or state statutes, and Plaintiff does not cite to any "federal statute that evinces Congress's intent to waive the United States' immunity from suit" under the UADA. *See Marcus*, 813 F. Supp. 2d at 17 (cleaned up); *see also Coulibaly v. Kerry*, 213 F. Supp. 3d 93, 150 n.51 (D.D.C. 2016) (noting that the federal government can generally rely on sovereign

immunity from claims brought under "local workplace laws" absent any "evidence in a federal statute that Congress intended to waive sovereign immunity").

Furthermore, "[t]he Utah Supreme Court has held that an individual does not have a private right of action for violations of the UADA." *Giddings v. Utah Transit Auth.*, 107 F. Supp. 3d 1205, 1209 (D. Utah 2015). If a plaintiff does bring such claims in federal court, they must instead be raised under federal anti-discrimination statutes. *See id.*; *Salas v. Univ. of Utah Madsen Health Cntr.*, No. 21-cv-00437, 2022 WL 170066, at *6 (D. Utah Jan. 19, 2022).

Indeed, "the exclusive remedy for an employee claiming a violation of the [UADA] is an appeal to the state Division of Antidiscrimination and Labor." *Giddings*, 107 F. Supp. 3d at 1209 (cleaned up). And "[a]n aggrieved employee may bring other causes of action to court, but the UADA itself does not provide for suit by a private citizen asserting a violation of the Act." *Giddings*, 107 F. Supp. 3d at 1209 (cleaned up). Moreover, commencement of an "action in federal court under federal law effectively bars [] claims under the UADA before the commission." *Id*. (citing Utah Code Ann. § 34A–5–107(16)(a)).

For these reasons, Plaintiff has failed to establish subject-matter jurisdiction over his claims under § 1981 and the UADA, and to state a claim under the UADA. The Court must therefore dismiss those claims.[5]

---

[5] Because the Court must dismiss all of Plaintiff's federal claims, even if his UADA claims were otherwise viable, this Court would decline to exercise supplemental jurisdiction over them. *See* 28 U.S.C. § 1367(c)(3); *see also Jianquing Wu v. Special Counsel, Inc.*, 54 F. Supp. 3d 48, 57–58 (D.D.C. 2014) (declining to exercise supplemental jurisdiction over the plaintiff's pendent state-law claims after dismissing Title VII and ADEA claims under Rule 12(b)(6)), *aff'd*, No. 14-7159, 2015 WL 10761295 (D.C. Cir. Dec. 22, 2015) (per curiam).

B. **Title VII and ADEA Retaliation Claims**

The Court also agrees with Defendants, *see* Dkt. 10-1 at 8–10, that Plaintiff has failed to exhaust his claims for retaliation under Title VII and the ADEA. *See* 29 U.S.C. § 633a(b)–(d); 42 U.S.C. § 2000e-16(c); *see also Achagzai v. Broad. Bd. of Governors*, 170 F. Supp. 3d 164, 175 (D.D.C. 2016) ("A federal employee who seeks to sue [the] agency for discrimination under Title VII or the ADEA must, absent unusual circumstances, timely exhaust administrative remedies before bringing suit."), *appeal dismissed*, No. 16-5171, 2016 WL 11859847 (D.C. Cir. Oct. 31, 2016) (per curiam).

To exhaust a claim under Title VII, a claimant must file a formal complaint with the EEOC either 30 days after the agency issues its final decision or within 180 days of the allegedly unlawful conduct, whichever is earlier. *See Ndondji v. InterPark, Inc.*, 768 F. Supp. 2d 263, 276 (D.D.C. 2011) (citing 42 U.S.C. § 2000e–5(e)(1)); *Blue v. Jackson*, 860 F. Supp. 2d 67, 73 (D.D.C. 2012) (citing 42 U.S.C. § 2000e-16(c)). Similarly, under the ADEA, a claimant "may invoke the EEOC's administrative process, and then sue if dissatisfied with the results."[6] *Rann v. Chao*, 346 F.3d 192, 195 (D.C. Cir. 2003) (citing 29 §§ 633a(b), (c)) (other citation omitted).

Importantly, under either Title VII or the ADEA, a plaintiff fails to exhaust his administrative remedies when the complaint filed in federal court includes a claim that was not raised in his administrative complaint. *Mogenhan v. Shinseki*, 630 F. Supp. 2d 56, 60 (D.D.C. 2009). This exhaustion requirement is not a "mere technicality," but "serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt

---

[6] The Court notes that a claimant may also file an ADEA claim directly in federal court, presuming that "within 180 days of the allegedly discriminatory act, he provides the EEOC with notice of [her] intent to sue at least 30 days before commencing suit." *Rann*, 346 F.3d at 195 (citing 29 U.S.C. §§ 633a(c), (d)). There is no indication whatsoever in the record that Plaintiff provided the EEOC with notice of his retaliation claim in accordance with Section 633a(d) or otherwise.

adjudication and decision." *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up). Therefore, "[o]nly those claims that are contained in the administrative complaint or that are like or reasonably related to the allegations of the administrative complaint can be raised" in the subsequent lawsuit. *Mills v. Hayden,* 284 F. Supp. 3d 14, 20 (D.D.C. 2018) (cleaned up)

Here, Plaintiff's administrative complaint was expressly predicated on discrimination. *See* Dkt. 10-4. He neither raised a retaliation claim in the administrative complaint nor made any reference therein to his previous protected activity or non-selections. *Id*. Likewise, none of his other submissions during the administrative process raised, or so much as implied, a retaliation claim. *Id.* Nor do any of the alleged facts now giving rise to his retaliation claim appear in those submissions. *See, e.g.*, Dkt. 10-3; Dkt. 10-5, Dkt. 1-1.

Simply put, without any "sort of notice of the substance of [his retaliation] claims in the body of the charge[,]" *Greer v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 297, 307 n.9 (D.D.C. 2015), Plaintiff has failed to exhaust them, *see, e.g.*, *Mount v. Johnson,* 36 F. Supp. 3d 74, 88 (D.D.C. 2014) (holding that an EEOC complaint alleging non-selection for position based on race discrimination was not sufficiently like allegations of non-selection based on retaliation, as different causes of action cannot be considered "of a like kind"). Nor can it be argued that the retaliation claim is "reasonably related" to Plaintiff's discrimination charge since his administrative complaint "lack[ed] any indication that the allegedly unlawful conduct described was motivated by [his] prior EEO charge[s]." *See Hicklin v. McDonald*, 110 F. Supp. 3d 16, 22 (D.D.C. 2015).

As noted above, exhaustion of Title VII and ADEA claims is not jurisdictional, *see Koch*, 935 F. Supp. 2d at 170, and here, "like a statute of limitations, [exhaustion] is subject to . . . estoppel[] and equitable tolling[,]" *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393

9

(1982). But Plaintiff has not "presented facts demonstrating—or even suggesting—that" either applies here. *Chennareddy v. Dodaro*, 698 F. Supp. 2d 1, 19 (D.D.C. 2009). Indeed, he has not opposed Defendants' Motion to Dismiss at all. Nor is equitable relief merited, as nothing here suggests that Plaintiff faced any adversity at all that would have prevented him from raising his retaliation claim administratively. *See id*. Accordingly, Plaintiff has failed to exhaust his retaliation claim. The Court must therefore dismiss that claim under Rule 12(b)(6).

### C. Title VII and ADEA Discrimination Claims

Finally, the Court finds that Plaintiff has failed to state a claim for discrimination, either based on his race and sex under Title VII or based on his age under the ADEA.[7] *See* Dkt. 10-1 at 10–13.

Title VII prohibits discrimination in the federal workplace because of an individual's race, color, sex, religion, or nationality, and prohibits an employer from making any personnel decision based on one or more of these attributes. *See* 42 U.S.C. § 2000e–16. Analogously, the ADEA prohibits discrimination against federal employees based on age. *See* 29 U.S.C. § 623, 633a.

As here, "[i]n Title VII and ADEA cases alleging disparate treatment, a plaintiff establishes a *prima facie* case of discrimination by pleading facts from which it can reasonably be inferred that (1) he is a member of a protected class, (2) he suffered an adverse employment action, and (3) the unfavorable action gives rise to an inference of discrimination (that is, an inference that his employer took the action because of his membership in the protected class)." *Bartlette v. Hyatt Regency*, 208 F. Supp. 3d 311, 321–22 (D.D.C. 2016) (cleaned up); *see also*

---

[7] Defendants also argue that Plaintiff has failed to sufficiently state a retaliation claim under Title VII or the ADEA. *See* Dkt. 10-1 at 12–13. Because the Court dismisses those claims for failure to exhaust, it need not address this argument.

*Wilson v. Cox*, 753 F.3d 244, 247 (D.C. Cir. 2014) (noting courts "generally apply the same approach in ADEA cases" as "in Title VII cases").

Plaintiff has not satisfied the third prong. He has not sufficiently alleged that Defendants' actions were plausibly taken due to his membership in a protected class. Although Plaintiff invokes his own race, sex, and age, and broadly contends that Defendants' actions were taken because of those characteristics, *see* Dkt. 1 ¶¶ 9–11, his Complaint does not explain why or how he believes his protected status to be the motivation behind his non-selection. *See Easaw v. Newport*, 253 F. Supp. 3d 22, 29 n.4 (D.D.C. 2017) ("Stating simply 'I was turned down for a job because of my [protected class]' is precisely the kind of conclusory allegation that is patently incompatible with *Twombly* and *Iqbal*'s pleading requirements."). And there is "no reasonable inference of [] discrimination where an individual just happens to be a member of a protected class." *Pollard v. Quest Diagnostics*, 610 F. Supp. 2d 1, 29 (D.D.C. 2009).

Plaintiff argues that Defendants knew of his protected statuses because he noted those statuses on a questionnaire submitted with his application. *See* Dkt. 10-3 ¶ 10. But this does not bolster his claim "because—other than implying the possibility that the Agency saw his race[, sex, and age] before making the hiring decision—it provides no further factual basis for the inference that [he] was not selected *because* of his race[, sex, or age]." *Webster v. Haaland*, No. 23-3050, 2024 WL 4240286, at *5 (D.D.C. Sept. 19, 2024) (emphasis in original) (dismissing non-selection-based discrimination claims where the plaintiff alleged that the hiring official knew his protected status because he listed it on his resume).

Of course, a plaintiff may also establish "an inference of discrimination . . . by demonstrating that []he was treated differently from similarly situated employees who are not part of the protected class." *See George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005). But

Plaintiff does not provide any information regarding the characteristics of the selected applicant (or any other comparator) or as to whether he and that applicant (or any other comparator) were similarly situated. *See* Dkt. 1 ¶¶ 6–8. Instead, he simply asserts that he was more qualified. *See id*. Plaintiff's unfurnished insistence of his superior qualifications, without more, is insufficient to allege that Defendants' decision was pretextual. *See Stoyanov v. Winter*, 643 F. Supp. 2d 4, 13–14 (D.D.C. 2009).

Finally, Plaintiff seems to suggest that the combination of his two prior non-selections with his non-selection for the position at Wahlen Medical Center shows discriminatory animus. *See generally* Dkt. 1. But aside from the position titles, respective locations, and dates of Plaintiff's respective rejections, the Complaint contains no information at all regarding the circumstances of these non-selections. For example, the Complaint is silent on the candidates chosen, the job requirements for those positions, whether the decisionmakers of those non-selections were the same (or were the same as the decisionmaker for the position at Wahlen Medical Center), or whether those decisionmakers were aware of Plaintiff's protected statuses. Certainly, "it cannot be that any allegedly discriminatory or retaliatory non-[selection] is like or related to a previous non-[selection][,]" particularly where, as here, those positions are in different states and bear other different attributes. *See Laughlin v. Holder*, 923 F. Supp. 2d 204, 214 (D.D.C. 2013).

To that end, "conclusory allegations and unadorned speculation about the Department's hiring practices will not give rise to a conceivable, let alone plausible, inference that [his] non-selection was based on his race, [age], or sex." *Bishop v. Vilsak*, No. 23-cv-2623, 2024 WL 2383201, at *2 (D.D.C. May 23, 2024) (cleaned up). While Defendants may have "hired other people for jobs he wanted[,]" *id.* *3, Plaintiff presents only legal conclusions couched as factual

12

allegations in alleging that its personnel decisions were borne from discrimination, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Because Plaintiff's Complaint supplies, at best, boilerplate allegations of discrimination under Title VII and the ADEA, those claims must be dismissed. *See Jianquing Wu*, 54 F. Supp. 3d at 56. Ultimately, this Court "cannot create something out of nothing." *Id.* (citation omitted).

## IV. CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss, Dkt. 10, pursuant to Federal Rules of Civil Procedure 12(b)(1) and (b)(6). The Court thus dismisses Plaintiff's claims in full. It is hereby

**ORDERED** that Defendants' Motion to Dismiss, ECF No. 10, is **GRANTED**; and

**ORDERED** that Defendants' Motion to Transfer is **DENIED** as moot.

This is a final appealable Order. See Fed. R. App. P. 4(a). The Clerk of the Court is directed to close this case.

Date: January 30, 2025

                                                                ANA C. REYES
                                                                United States District Judge